THE CITY OF CAPE MAY, PLAINTIFF IN ERROR, v. THE CAPE MAY, DELAWARE BAY AND SEWELL'S POINT RAILROAD COMPANY, DEFENDANT IN ERROR.

1. The city council of Cape May, by an ordinance, granted permission to a railway company to lay its tracks on certain streets—naming them—and also to construct all necessary switches and turnouts. *Held,* that turnouts built in pursuance of such authority, unless it clearly appears that the authority has been exceeded, are not such an obstruction of the streets as to warrant their summary and forcible removal by police intervention without notice or a hearing.

2. Notice, either actual or constructive, should be given to all who are interested before the adoption of an ordinance which affects and practically adjudicates property rights. An unreasonable ordinance will not be sustained.

3. A resolution by a city council declaring the turnout of a street railway to be an unlawful obstruction, and directing the street committee to employ counsel and take legal measures to remove it, is not objectionable.

On error to the Supreme Court. For opinion of Supreme Court, see 29 *Vroom* 565.

For the plaintiff in error, *David J. Pancoast.*

For the defendant in error, *Edward A. Armstrong.*

The opinion of the court was delivered by

NIXON, J. This writ of error brings here for review the judgment of the Supreme Court setting aside both a resolution and an ordinance passed by the council of the city of Cape May. The resolution was adopted June 4th, 1895, and is as follows:

"WHEREAS, The Cape May, Delaware Bay and Sewell's Point Railroad Company, without the sanction or authority of the city council, on the twenty-eighth day of May last, made an extension of its road by laying an additional track on Beach avenue, from the Sea Breeze Hotel westward to the end of Beach Avenue drive, a distance of about fifteen hun-

dred feet, the effect of which is injurious to the said Beach avenue and the right of the traveling public therein; now, therefore, be it

" *Resolved,* That the said railroad company be notified and requested to remove the said extension at once, and if they shall refuse to comply with such notice and request, that said committee shall be empowered and directed to employ counsel and take legal measures in behalf of the city to enforce the same."

The ordinance was introduced June 3d and adopted June 13th, 1895, and is as follows: .

"An ordinance relating to the railroad encroachments and obstructions in Beach avenue.

" Section 1. Be it ordained and enacted by the inhabitants of the city of Cape May, in city council assembled, and it is hereby enacted by the authority of the same, that the extension to their street railroad which the Cape May, Delaware Bay and Sewell's Point Railroad Company made on the twenty-eighth day of May, 1895, on Beach avenue, from the Sea Breeze Hotel westward to the end of Beach Avenue drive, without the sanction or authority of city council, is an unlawful obstruction and encumbrance in and upon the said avenue, and the street committee is hereby authorized and directed to remove the same, and the mayor of the city is hereby requested to aid and assist the said committee in the enforcement of this ordinance, according to the duty imposed upon him by the city charter.

" Section 2. And be it ordained and enacted by the authority aforesaid that this ordinance shall take effect immediately."

The principal question raised by the writ relates to the validity of this ordinance, and it is important to first note the relation of the parties to the controversy. The defendant in error is a railway corporation formed by the merger and consolidation, under the laws of this state, of three companies, and has been for several years past operating a street railway in and through the city of Cape May to adjacent points, and a map of this consolidated road is on file in the office of the

secretary of state, showing the true location of the same, as required by law. The validity of this consolidation, and the right of the new corporation to exercise all the privileges and franchises possessed by the constituent roads out of which it was formed by the merger, is not challenged in these proceedings. The city council of Cape May, the plaintiff in error, by an ordinance dated June 29th, 1892, granted to the Cape May and Schellenger's Landing Railroad Company, one of the three companies merged into and now forming the Cape May, Delaware Bay and Sewell's Point Railroad Company, "permission to lay, construct, maintain and operate a railroad, with the necessary switches and turnouts, upon and adjoining the boardwalk from Madison avenue, in the city of Cape May, to Wood street, in said city, and from Wood street, crossing the said boardwalk to the southerly side of Beach avenue, and thence extending inside and adjoining the boardwalk along the same to Broadway, and thence to the northwardly side of Beach avenue and extending to the boundary line of the city of Cape May."

Other provisions follow, providing, among other things, that the propelling power for its cars shall be electric motors, and also that the company shall file its acceptance of the ordinance with the city recorder, which was done.

It will be perceived that the ordinance gives permission to conduct and operate the railroad with the necessary switches and turnouts, and also that the route includes Beach avenue from which that part of the defendant's road described in the resolution and ordinance was to be removed.

After the passage of this ordinance the company laid its tracks and two turnouts on Beach avenue, and the road had been operated with these sidings for over two years without objection, when, in May, 1895, the two were connected by the addition of about four hundred and seventy feet, and thus converted into one turnout of about fifteen hundred feet in length. This act on the part of the company gave occasion for the passage of the ordinance in question and also the resolution.

The purport of the ordinance is to adjudge this turnout, or extension as it is termed in the ordinance, an unlawful obstruction amounting to a nuisance, and to direct its removal as such. This is the *status* as claimed by counsel for the plaintiff in error, who, in his brief, says: " On the 4th of June, city council passed a resolution directing the street committee to take legal measures for the removal of said extension, and on the 13th of the same month passed an ordinance declaring the said extension to be a nuisance and ordering its removal."

The general proposition that the municipal authorities of a city may in certain cases remove in a summary manner obstructions from its streets, will not be controverted by anyone. Power to do this is given to the council of Cape May. *Pamph. L.* 1875, *p.* 206, § 19. But such power without notice or hearing should be exercised only in cases of nuisances *per se*, and which are unquestioned and obvious, such as obstructions on a street which impede travel or endanger the safety of persons using it. A street railway is not such an unlawful obstruction as can be summarily and forcibly removed by police intervention, when its construction has been authorized by the city council, and it does not clearly appear that the authority has been exceeded. In such a case some less summary remedy should be sought if any grievance exists. The ordinance passed by the city council, in 1892, empowered the company to construct all necessary turnouts. It is in evidence and uncontradicted that the business of the company made this lengthened turnout necessary in order that its cars might be properly operated at this point. Two turnouts had been in use at this place since 1893 without protest from anyone, and the act complained of merely connected the two by an addition of four hundred and seventy feet, making one siding of about fifteen hundred feet, instead of one thousand feet in the two old ones. It does not appear how this turnout, only about one-third longer than the two previously used, could have so interfered with the public safety or convenience as to require its immediate and forcible removal without notice or a hearing given to the company. In *Wood Nuis.* (3*d ed.*),

*p.* 977, it is said : " The fact that a particular thing is declared a nuisance by an ordinance does not make that use of property a nuisance unless it is in fact so, and comes within the common law or statutory idea of a nuisance."

Furthermore, the adoption of this ordinance by the city council was at once both an adjudication of the rights and a condemnation of the property of the defendant company without an opportunity to be heard, for it is not claimed that any previous notice, either actual or constructive, was given to the company of the action of the council.  It being an ordinance which affected property rights, the defendant in error was entitled to notice before its passage.

This ordinance cannot be sustained on still another ground. It is unreasonable.  It will be perceived that it directs the removal of the extension to the street railroad made on the 28th of May, 1895, from the Sea Breeze Hotel westward to the end of Beach Avenue drive.  This distance includes the whole of the turnout, both the old part and the new.  That this was the purpose of the council is made clear by the resolution introduced concurrently with the ordinance, in which the extension is described in the same manner and the words " a distance of about fifteen hundred feet " are added.  It thus contemplated the forcible removal, as an . unlawful obstruction of the street, the whole fifteen hundreed feet, the entire turnout of the defendant company on Beach avenue, two-thirds of which had been used for more than two years without protest from the city council or any private citizen or property-owner, and which was laid under authority from the city to construct " all necessary switches and turnouts." In *Pennsylvania Railroad Co.* v. *Jersey City,* 18 *Vroom* 288, the late Chief Justice Beasley said : " The third and last ground was that the ordinance in question is unreasonable, and the stress. of the argument was properly laid on this point.  If this by-law be subject to this imputation, there can be no doubt that it would be the duty of this court to pronounce it a nullity."  We think this ordinance is subject to that imputation.

We do not, however, concur with the judgment of the Supreme Court in setting aside the resolution. It only provides that the street committee shall notify and request the railroad company to at once remove the extension of its track on Beach avenue, from the Sea Breeze Hotel to the end of Beach Avenue drive, a distance of about fifteen hundred feet, and instructs them, in case of refusal, to comply with such notice, to employ counsel and take legal measures to enforce its removal. We think it was clearly within the power of council to pass such a resolution. It did not, of itself, affect any property right of the railroad company, and, therefore, no notice was required to be given before passing it. By its terms it was only a notice and request. No summary or arbitrary action was advised or suggested, but rather the contrary, for the committee is directed to employ counsel and to take legal measures to accomplish the object proposed. It is always lawful to employ counsel and take legal measures to remedy a real or supposed grievance, whether public or private, and we think the instructions to the committee were unobjectionable.

Our conclusion is that the judgment of the Supreme Court setting aside the ordinance should be affirmed, but with respect to the resolution it should be reversed.

As to ordinance—

*For affirmance*— DEPUE, GUMMERE, LUDLOW, VAN SYCKEL, DAYTON, HENDRICKSON, NIXON.   7.

*For reversal*—THE CHIEF JUSTICE, COLLINS, DIXON, BOGERT.   4.

As to resolution—

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, COLLINS, DEPUE, DIXON, GUMMERE, LUDLOW, VAN SYCKEL, BOGERT, DAYTON, HENDRICKSON, NIXON.   11.